962 F.2d 968
 74 Ed. Law Rep. 1065
 STATE OF COLORADO; State of Montana; New Mexico Student
Loan Guarantee Corporation; State of Utah; and
State of North Dakota, Plaintiffs/Appellants,
v.
Lauro F. CAVAZOS, Secretary of the United States Department
of Education, and United States Department of
Education, Defendants/Appellees.
 No. 90-1298.
 United States Court of Appeals,
Tenth Circuit.
 April 17, 1992.
 
 1
 David P. Temple, Asst. Atty. Gen., State of Colo., Denver, Colo. (Gale A. Norton, Atty. Gen., Duane Woodward, Former Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Paul Farley, Deputy Atty. Gen., Wade Livingston, First Asst. Atty. Gen., Richard H. Forman, Sol. Gen., Tim M. Tymkovich, Sol. Gen., State of Colo., with him on the brief), for plaintiffs-appellants.
 
 
 2
 Neil H. Koslowe, Atty., Dept. of Educ., Washington, D.C. (Stuart M. Gerson, Asst. Atty. Gen., William Kanter, Deputy Director, Dept. of Justice, Edward C. Stringer, General Counsel, Harold Jenkins, Atty., Brian Siegel, Atty., Dept. of Educ., with him on the brief), for defendants-appellees.
 
 
 3
 Before ANDERSON, and BALDOCK, Circuit Judges, and ALDON J. ANDERSON, District Judge.*
 
 
 4
 ALDON J. ANDERSON, District Judge.
 
 
 5
 Plaintiffs-appellants seek this court's determination that the district court erred in granting defendants-appellees motion for summary judgment and dismissing the complaint. The issue presented is whether the 1987 amendments to provisions of the Higher Education Act of 1965 governing the Guaranteed Student Loan Program ("GSLP")[1] resulted in a governmental taking of private property without fair compensation and were therefore unconstitutional.
 
 
 6
 Plaintiffs-Appellants are four state agencies and one state-chartered nonprofit corporation. All of the five plaintiffs-appellants are "guaranty agencies" having designated roles in the administration of the GSLP. Under the GSLP, eligible students receive loans directly from private or public lenders. 34 C.F.R. § 682.101(a), (c). Participating guaranty agencies insure lenders against the risk of default by borrowers. Id. § 682.100(b)(1). The Department of Education ("DOE"), in turn, reimburses guaranty agencies for amounts paid directly to lenders. Id. The basis of the arrangement between lenders, guaranty agencies and DOE is a series of five contracts entered into by the participating guaranty agency and DOE. 20 U.S.C. § 1078(c); 34 C.F.R. § 682.400(a)-(b). Relevant to this case are two specific contracts: the "reinsurance contract," and the "supplemental reinsurance contract." "Under a reinsurance agreement, the [DOE] reimburses the guarantee agency for 80 percent of its losses on default claim payments to lenders." 34 C.F.R. § 682.404(a)(1). Under a supplemental reinsurance contract, the DOE may reimburse the guaranty agency for up to 100 percent of its losses with additional provisions for less than 100 percent reimbursement if the amounts of loans in default exceed certain limits. Id. § 682.405(a)(1). As of the time period relevant to this case, all of the plaintiffs-appellants had entered valid reinsurance and supplemental reinsurance contracts with DOE.
 
 
 7
 Under the applicable regulations, guaranty agencies are directed to establish and maintain a "reserve fund." Id. § 682.410(a)(1). The purpose of the reserve fund is to provide operating funds for the guaranty agency to perform its functions, but the guaranty agency may use reserve funds only to: (i) guarantee loans; (ii) pay default claims; (iii) pay death disability, and bankruptcy claims; (iv) refund overpayment of insurance premiums paid by borrowers; (v) pay DOE its equitable share of borrower payments; and (vi) repay reserve fund advances made by DOE. Id. § 682.410(a)(2)(i)-(vi). Reserve funds therefore may not be used for any purpose unrelated to the GSLP. Proper sources of money for a guaranty agency's reserve fund include (1) federal advances; (2) funds appropriated by a state for the agency's loan guaranty program; (3) funds obtained by charging borrowers a loan insurance premium; (4) allowances paid by DOE to guaranty agencies to offset administrative costs; (5) funds received through grants, gifts and other sources; (6) collections on defaulted loans; (7) reinsurance payments from DOE; (8) and earnings on reserve fund investments.[2] Id. § 682.410(a)(1)(i)-(ix). Thus, guaranty agency reserve funds may be and frequently are comprised of federal, non-federal and even private funds. Neither party to the present appeal disputes that the reserve funds of the plaintiff guaranty agencies included both federal and non-federal funds.
 
 
 8
 In the course of their operation, guaranty agencies historically have been able to accumulate sizable reserve funds through rigorous collection of defaulted loans, careful resource management and prudent investment. In 1987, prompted by a GAO report concluding that many of the state guaranty agencies had accumulated reserve funds far in excess of amounts needed to adequately respond to projected risk,[3] Congress amended the statutes governing the GSLP. Omnibus Budget Reconciliation Act of 1987, §§ 3001-03, 101 Stat. 1330-36 to 1330-38 (1987) (codified as 20 U.S.C. § 1072(e)) (repealed September 30, 1989). Under the amendments, guaranty agencies were forbidden from accumulating excess reserve funds. Id., 101 Stat. 1330-36, § 3001(a)(e)(1). Moreover, the amendment established formulae for determining allowable amounts of reserve funds, id. § 3001(a)(e)(1)(A)-(E), and provided that the individual guaranty agencies could choose any of four different methods for transferring excess reserve funds to DOE. Id. § 3001(a)(e)(2).[4]
 
 
 9
 According to its statutory authorization under the 1987 amendments, DOE determined the amount of excess reserve funds held by each of the guaranty agencies involved in the present litigation and, in February 1988, demanded that the agencies transfer those amounts. The guaranty agencies sued DOE in March of 1988 seeking by their complaint to enjoin DOE from withholding reinsurance payments and also requesting a declaration that the 1987 amendments were unconstitutional in that they resulted in a taking of property without just compensation. In October of 1988, DOE informed the agencies that if they failed to elect a method of transferring the funds, DOE would withhold reinsurance payments as they came due under the reinsurance contracts, offsetting such amounts until the excess reserve fund assessment had been paid in full. In November 1988, DOE began withholding reinsurance payments due under the reinsurance and supplemental reinsurance contracts. By January 1989, DOE had offset the entire amounts of the excess reserve funds it had ordered the plaintiffs-appellants to transfer. There is no dispute that the reinsurance payments withheld by DOE related to loans which had been executed and guaranteed prior to the enactment of the 1987 amendments. The district court, relying on the decisions of other circuits in which the 1987 amendments had been challenged on the same grounds, rejected the agencies' arguments and granted DOE's motion for summary judgment.
 
 
 10
 On appeal, the guaranty agencies argue that the 1987 amendments resulted in an unconstitutional taking of private property in two related but distinct respects: (1) that the statute effects a taking by allowing DOE to confiscate "private" property because the funds comprising the surplus accounts came from non-federal sources and were taken without compensation; and (2) that the default method of collection--withholding reinsurance payments as they came due--worked an impermissible taking because the guaranty agencies have protected property interests in their rights under the reinsurance and supplemental reinsurance contracts, and that such contract rights are taken without compensation by DOE's withholding of payments.
 
 
 11
 This court has jurisdiction over the appeal by virtue of 28 U.S.C. § 1291. "We review summary judgment de novo, applying the same legal standard employed by the district court." Slade for Estate of Slade v. United States Postal Service, 952 F.2d 357, 360 (10th Cir.1991) (citations omitted). Thus, the trial court's grant of defendants-appellees' motion for summary judgment will be affirmed if, based on the undisputed material facts, the movant is entitled to judgment as a matter of law. Fed.R.Civ.Pro. 56(c).
 
 
 12
 The issues presented by this appeal are not unique. As of the writing of this opinion, five circuits have addressed these precise issues in essentially identical factual contexts, and all have upheld the constitutionality of the statute. See Rhode Island Higher Educ. Assistance Auth. v. Secretary, United States Dept. of Educ., 929 F.2d 844 (1st Cir.1991); Great Lakes Higher Educ. Corp. v. Cavazos, 911 F.2d 10 (7th Cir.1990); Educ. Assistance Corp. v. Cavazos, 902 F.2d 617 (8th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 246, 112 L.Ed.2d 205 (1990); Ohio Student Loan Comm'n v. Cavazos, 900 F.2d 894 (6th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 245, 112 L.Ed.2d 203 (1990); South Carolina State Educ. Assistance Auth. v. Cavazos, 897 F.2d 1272 (4th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 243, 112 L.Ed.2d 202 (1990); see also Delaware v. Cavazos, 723 F.Supp. 234 (D.Del.1989), aff'd without opinion, 919 F.2d 137 (3d Cir.1990).
 
 
 13
 Having carefully studied the opinions of the First, Seventh, Eighth, Sixth and Fourth Circuits, this court is of the opinion that it need not "reinvent so well-fashioned a wheel." Rhode Island Higher Educ. Assistance Auth., 929 F.2d at 850. For reasons discussed in those opinions, the court hereby concludes that the 1987 amendments are not unconstitutional and, accordingly, AFFIRMS the judgment of the district court.
 
 
 
 *
 Honorable Aldon J. Anderson, Senior United States District Judge for the District of Utah, sitting by designation
 
 
 [1]
 20 U.S.C. §§ 1071 to 1087-2
 
 
 [2]
 DOE regulations allow guaranty agencies to invest fund assets in "low-risk securities" and hold the agencies to the level of care required of a "fiduciary charged with the duty of investing the money of others." 34 C.F.R. § 682.410(a)(5) (1991)
 
 
 [3]
 General Accounting Office, Pub. No. GAO/HRD-86-57, Guaranteed Student Loans: Better Criteria Needed for Financing Guarantee Agencies (1986). In the report, the GAO concluded that the lack of statutory or regulatory guidance as to the appropriate amount of reserve funds lead to a "steady buildup of reserves which, in the aggregate, is disproportionately high in relation to the agencies' risks." Id. at 18 (copy of the report submitted as Exhibit 1 to Affidavit of Dewey L. Newman, Addendum to Defendants-Appellees' Brief at 10a)
 
 
 [4]
 The four following transfer methods were set forth in the statute: (1) by repaying advances made by DOE to the agency which the agency was not required to repay; (2) by withholding and canceling claims for reimbursement or otherwise payable; (3) by reducing the amount of payments for which application will be made by the agency; or (4) by any other method of reducing payments from or increasing payments to the Federal Government, including payment of additional reinsurance fees. 101 Stat. 1330-37, § 3001(a)(e)(2)(A)-(D)